Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/27/2020 08:09 AM CDT

State of Nebraska, appellee, v.
Trent E. Duckworth, appellant.

___ N.W.2d ___

Filed October 20, 2020.    No. A-19-884.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Motions for New Trial: Appeal and Error.** The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion.

3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

4. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

5. **Assault: Words and Phrases.** A dangerous instrument is any object which, because of its nature and the manner and intention of its use, is capable of inflicting bodily injury.

6. **Criminal Law.** Whether particular conduct constitutes a threat depends on the context of the interaction between the people involved.

7. **Motions for New Trial: Appeal and Error.** It is not an abuse of discretion to overrule a motion for new trial that is based on errors

alleged to have occurred during trial, but to which no timely objection was made.

8. **Trial: Prosecuting Attorneys: Convictions: Due Process.** Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infected the trial that the resulting conviction violates due process.

9. **Trial: Prosecuting Attorneys.** Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole.

10. **Trial: Prosecuting Attorneys: Appeal and Error.** In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction.

11. **Trial: Prosecuting Attorneys.** Prosecutors generally may not give their personal opinion on the veracity of a witness or the guilt or innocence of the accused.

12. **Trial: Prosecuting Attorneys: Evidence: Jury Instructions: Appeal and Error.** Even if a prosecutor misstates the law, such an error is harmless where the trial court properly instructed the jury to consider only the evidence and further advised that statements and arguments of counsel are not evidence.

13. **Effectiveness of Counsel: Appeal and Error.** Where deficient performance is not alleged in the assigned error, an appellate court will not scour the remainder of the brief in search of such specificity and will not synthesize a specific assignment from the argument section of the brief of the party asserting the error.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Affirmed.

Jonathan M. Frazer, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

Riedmann, Judge.

## I. INTRODUCTION

Trent E. Duckworth was convicted of one count of second degree assault, one count of terroristic threats, and two counts of possession of a controlled substance in the district court for Saunders County. He received a concurrent sentence of 5 to 8 years' imprisonment for the four counts. Duckworth appeals, alleging insufficiency of the evidence for the second degree assault and terroristic threats convictions, prosecutorial misconduct, imposition of excessive sentences, and ineffective assistance of counsel. For the reasons set forth herein, we affirm.

## II. BACKGROUND

In April 2018, Duckworth and the victim, J.B., were using methamphetamine together in Wahoo, Nebraska. At some point between April 15 and April 19, Duckworth and J.B. went for a drive. J.B. testified that Duckworth had been awake for 5 days and was under the influence of methamphetamine. An argument ensued, and when Duckworth threw J.B.'s cigarettes out of the car window, she spit in his face. Duckworth "backhanded" her. He then began telling J.B. to hit him back, and she asked to be taken home. Once the pair returned to Duckworth's house, Duckworth "blocked the bedroom door and said that [they] weren't going to go anywhere . . . until [J.B.] hit him back." J.B. testified that because of Duckworth's relentlessness and his unwillingness to let her out of the room without hitting him, she punched him in the face.

Duckworth immediately began hitting J.B. repeatedly on her head, face, and body, and she fell to the ground while the abuse continued. When he was finished, Duckworth threw her a towel, and she went into the bathroom. According to J.B., Duckworth was "back in his bedroom" and "in panic mode," drastically changing his emotions from sad to angry. According to J.B., Duckworth told her that he "didn't want to go to prison, that he had to kill me," that "he was sorry and

that he never meant to hurt me. And then he would think about it for a second and then he went back to being irate, like, he had to kill me." Duckworth made J.B. remove her clothing and jewelry, telling her again that he was going to kill her. She testified she was scared and thought she was going to die.

J.B. took multiple pictures of her face with her cell phone's camera in the bathroom. She testified that she had a fractured nose, bruises on the left side of her body, and swollen, black eyes. When J.B. returned to the bedroom, she overheard Duckworth speaking on his cell phone, saying that "he beat the shit out of me and he [did not] know what he's going to do and that he was going to kill me." J.B. also heard Duckworth say "he wished he wouldn't have wore [sic] his steel-toed boots" and that J.B. "looked pathetic sitting there and he kicked [her in] the face."

After J.B. dressed, the couple got into Duckworth's car to travel to Fremont, Nebraska, for drugs. They stopped in the driveway of Duckworth's neighbor, Peter Costello, while Duckworth went back inside his own home. At that point, J.B. conversed with Costello while Costello stood in the driveway next to the car. Costello asked her what happened, and she said she was fine. Costello testified that J.B. was quivering, was crying, and had obviously been injured.

J.B. drove Duckworth to Fremont, where Duckworth purchased drugs, and the couple returned to Wahoo. J.B. remained at Duckworth's home for a few days before he eventually let her leave. During that period, Costello texted Duckworth repeatedly, trying to check on J.B.

The Wahoo police chief testified that on April 26, 2018, J.B. filed a police report. Duckworth was brought in for questioning, and he stated that he was worried that J.B. was afraid of him.

Duckworth was charged with one count of second degree assault, one count of terroristic threats, and two counts of possession of a controlled substance. A jury convicted Duckworth of all four counts, and he was sentenced to 5 to 8 years'

imprisonment for count 1, 1 to 2 years for count 2, 1 to 2 years for count 3, and 1 to 2 years for count 4, each to be served concurrently. Duckworth was credited 83 days for time served.

## III. ASSIGNMENTS OF ERROR

Duckworth assigns, renumbered and restated, that the trial court erred by (1) accepting the jury verdicts on counts 1 and 2 and finding the evidence sufficient to convict him on those counts; (2) not granting him a new trial based on prosecutorial misconduct that occurred during closing arguments; and (3) abusing its discretion by imposing excessive sentences. He also asserts that he received ineffective assistance of counsel.

## IV. STANDARD OF REVIEW

[1] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018).

[2] The standard of review for the denial of a motion for new trial is whether the trial court abused its discretion in denying the motion. *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020).

[3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019).

[4] Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour

the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

## V. ANALYSIS

### 1. Sufficiency of Evidence

Duckworth argues that the State failed to present evidence sufficient to convict him of second degree assault and terroristic threats. He contends that because there were inconsistencies in the evidence and a lack of corroboration, a reasonable jury could not have found in favor of the State. We disagree.

Inconsistencies in a witness' testimony relate to a witness' credibility. See *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020) (determining that defendant had opportunity to call jury's attention to inconsistencies in witness' testimony and refusing to determine credibility of such testimony). It is not in the purview of the appellate court to determine the credibility of witnesses on appeal, as such determinations are for the finder of fact. See, *id.*; *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020). Instead, the appellate court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. See *State v. McCurdy, supra*.

### (a) Second Degree Assault

Duckworth argues the evidence was insufficient to convict him of second degree assault, because J.B.'s testimony was inconsistent and she was unable to state with certainty that Duckworth kicked her while he was wearing steel-toed boots. Resolving inconsistencies lies outside our purview and instead is the job of the finder of fact. In closing arguments, Duckworth pointed out these inconsistencies, giving the jury the opportunity to ponder the validity of J.B.'s testimony and to weigh her credibility with those alleged inconsistencies. Despite the inconsistencies, the jury found J.B. credible. We will not disturb that finding.

[5] Based on the evidence, we determine that a reasonable jury could find the evidence sufficient to convict Duckworth of second degree assault. Second degree assault, in relevant part, requires that a person: (a) intentionally or knowingly causes bodily injury to another person with a dangerous instrument or (b) recklessly causes serious bodily injury to another person with a dangerous instrument. Neb. Rev. Stat. § 28-309(1) (Reissue 2016). "Bodily injury" is defined as physical pain, illness, or any impairment of physical condition. Neb. Rev. Stat. § 28-109(4) (Reissue 2016). A dangerous instrument is any object which, because of its nature and the manner and intention of its use, is capable of inflicting bodily injury. *State v. Romo*, 12 Neb. App. 472, 676 N.W.2d 737 (2004).

Although J.B. testified that she did not see the final blow, she later heard Duckworth state on his cell phone that he wished he had not worn his steel-toed boots and that he had kicked her in the face. Multiple photographs showed the extent of her injuries, and the police chief testified that J.B.'s facial "lacerative injury" was consistent with being struck by an object. He further testified that steel-toed boots are capable of causing blunt force trauma. Two pairs of steel-toed boots were found in Duckworth's home.

Therefore, the evidence presented was sufficient for a rational jury to find that Duckworth intentionally, knowingly, or recklessly caused serious bodily injury to J.B. by kicking her in the face while wearing steel-toed boots, a dangerous instrument in this situation.

### (b) Terroristic Threats

Duckworth argues that because J.B.'s statements that Duckworth threatened to kill her were uncorroborated, they were insufficient. However, corroboration was not required, and J.B.'s credibility was a question for the jury. He also asserts the evidence failed to support a finding of intent. We disagree.

[6] A person is guilty of making terroristic threats if he or she threatens to commit any crime of violence with the

intent to terrorize another or in reckless disregard of the risk of causing such terror. Neb. Rev. Stat. § 28-311.01 (Reissue 2016). The threat may be written, oral, physical, or any combination thereof. *State v. Tucker*, 17 Neb. App. 487, 764 N.W.2d 137 (2009). Whether particular conduct constitutes a threat depends on the context of the interaction between the people involved. See *State v. Curlile*, 11 Neb. App. 52, 642 N.W.2d 517 (2002).

Both the substance of Duckworth's statement and the context in which it was said supports a conviction of terroristic threats. According to J.B., Duckworth told her he was going to kill her. It was said at a time when Duckworth had just assaulted J.B. Clearly such statement in that situation could be considered a threat. And regardless of whether the threat was made with the intent to terrorize J.B. or made in reckless disregard of whether it would terrorize her, a rational jury could have found the elements of terroristic threats based on the evidence presented when viewed in the light most favorable to the State.

## 2. MOTION FOR NEW TRIAL AND PROSECUTORIAL MISCONDUCT

Duckworth alleges the court erred in denying his motion for new trial based on prosecutorial misconduct. He asserts that five different statements made by the prosecution during closing arguments were improper. However, Duckworth's counsel did not object at the time the statements were made, nor did he move for a mistrial at the end of closing statements. The issue of prosecutorial misconduct was not raised by Duckworth until verdicts had been rendered and defense counsel filed a motion for new trial. Because Duckworth failed to object or move for a mistrial following closing arguments, we find no abuse of discretion in the court's subsequent refusal to grant a new trial.

[7] The Nebraska Supreme Court has held that it is not an abuse of discretion to overrule a motion for new trial that

is based on errors alleged to have occurred during trial, but to which no timely objection was made. *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005). Additionally, a motion for a new trial does not preserve the issue. See *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018) (finding no error in denial of motion for new trial based on prosecutorial conduct, where issue of misconduct was not preserved by objection or motion for mistrial and conduct complained of did not rise to plain error).

When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, the court will review the record only for plain error. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*; *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016). Generally, the court will find plain error only when a miscarriage of justice would otherwise occur. *State v. Mrza, supra.* Plain error should be found only in those rare instances where it is warranted. *State v. McSwine, supra*.

[8-10] Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infected the trial that the resulting conviction violates due process. *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016). Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. *State v. Mrza, supra*. In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks;

(4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction. *Id.*

Duckworth failed to object and move for a mistrial at the time the prosecutor made her allegedly objectionable statements; therefore, he waived the alleged error and our review is confined to plain error. As more fully explained below, we find none.

(a) Use of "I Don't Think" Statements

Duckworth asserts that the prosecution improperly commented on his guilt or innocence in violation of *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018). Specifically, he points to the following statements made during closing arguments: "I don't think [Duckworth] intended to scare her. I don't think he cared," and "I don't think there's any question in the evidence you heard that she was terrorized." These statements were made when discussing whether Duckworth acted with reckless disregard of terrorizing J.B. In context, the prosecutor argued:

I don't think [Duckworth] intended to scare her. I don't think he cared. Legally we call that reckless disregard of whether he cared — whether he scared her. But I don't think there's any question in the evidence you heard that she was terrorized. Today's the day I'm going to die.

[11] In *State v. Hernandez, supra*, the Supreme Court stated that prosecutors generally may not give their personal opinion on the veracity of a witness or the guilt or innocence of the accused. It iterated that prosecutors could avoid the appearance of impropriety by refraining from using phrases such as "I believe" or "the State believes," explaining that "when a prosecutor asserts his or her personal opinions, the jury might be persuaded by a perception that counsel's opinions are correct because of his position as a prosecutor, rather than being persuaded by the evidence." *Id*. at 926, 911 N.W.2d at 547.

Here, the prosecutor's statement that she did not think there was any question in the evidence that J.B. was terrorized

is a permissible inference from the evidence presented. However, the prosecutor expressed her personal opinion on Duckworth's guilt of terroristic threats by stating that she believed he did not care whether he scared J.B.—in other words, she believed he acted in reckless disregard. Such a comment is impermissible when not commenting on the evidence; however, we find no prejudicial effect on Duckworth's right to a fair trial.

As explained in *Hernandez*, juries may be persuaded by counsel's opinion because of her position as a prosecutor, weighing in favor of a finding of prejudice. However, the comment was brief and isolated in the context of the State's closing argument. Moreover, the evidence presented against Duckworth was strong. J.B.'s account of the events, Costello's recollection of J.B.'s physical and emotional state, and his continued concern for her after seeing her injuries, all weigh in favor of Duckworth's conviction of terroristic threats. Because the comment was isolated and the evidence strong, we find the statements were not prejudicial and certainly did not rise to the level of plain error.

### (b) Use of "N Word"

Duckworth asserts that the prosecution engaged in misconduct when she attributed use of the "N word" to Duckworth. In its closing, the prosecution stated, "But that makes sense, because in [Duckworth's] messages he admits to beating [J.B.] like a big N word." But Duckworth's use of that word was stricken when the State sought to introduce it into evidence through the police chief and the jury was told to disregard it. The use of such a divisive phrase, particularly when not in evidence for the jury's consideration, could be considered misconduct; however, based on our plain error review, we find the isolated comment did not so prejudicially affect Duckworth's right to a fair trial that, if uncorrected, it would result in damage to the integrity, reputation, and fairness of the judicial process.

### (c) Use of Word "Bitch"

Duckworth asserts that the use of the word "bitch" constituted prosecutorial misconduct, because no witness testified that Duckworth used that word to refer to the victim. In closing, the prosecution asked, "But how do we even know that steel-toed boots were involved?" She went on to state, "Oh, right, because [Duckworth] kept talking about it. What did Costello say? He was bragging about it, look what I did to my bitch." At that point, the record indicates there was a sidebar between counsel and the judge, but our record does not include the content of that discussion. At the end of closing arguments, however, the trial court instructed the jury as follows:

> The attorneys just made arguments in closing to you. In making those comments, they are commenting on the testimony that we have heard and the evidence — evidence which was presented in this case. They, as you, are recalling the evidence as it was presented. However, if their recollection of the evidence differs from your recollection, you must follow your own recollection of what the evidence was.

At the hearing on the motion for a new trial, the parties agreed that the evidence did not include the statement attributable to Duckworth. Thus, we review the prosecutor's statement as a misstatement of the evidence. See *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016). Although we are unaware of the content of the sidebar, at the end of closing arguments, the court provided what appears to be a curative instruction, advising the jurors that the attorneys' recollection of the evidence may have differed from theirs and that the jurors needed to rely on their own recollection. Curative measures by the court can prevent prejudice. *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). If the prosecutor's statement was misleading, it was sufficiently corrected by the court. We find no misconduct rising to the level of plain error.

(d) Misstatement of Third Degree
Assault Elements

Duckworth asserts that the prosecutor's explanation of third degree assault was improper and constitutes prosecutorial misconduct. In its closing, the prosecution stated that "if you believe [Duckworth's] argument that [the victim] started it, that it's her fault, she should have been charged, then you can find 3rd Degree." This remark is improper, as it is a misstatement of the law. Third degree assault has no requirement that the victim be the aggressor; rather, it requires that a person "(a) [i]ntentionally, knowingly, or recklessly causes bodily injury to another person; or (b) [t]hreatens another in a menacing manner." Neb. Rev. Stat. § 28-310 (Reissue 2016).

[12] A misstatement of the law does not automatically require a new trial. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). Even if a prosecutor misstates the law, such an error is harmless where the trial court properly instructed the jury to consider only the evidence and further advised that statements and arguments of counsel are not evidence. *State v. Harker*, 1 Neb. App. 438, 498 N.W.2d 345 (1993). Additionally, without evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict. *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

Since the remark was improper, we analyze the prejudicial effect of the statement. We find it unlikely that the prosecution's misstatement of law tended to mislead or unduly influence the jury. The jury had been instructed on the elements of third degree assault prior to closing arguments. Duckworth does not argue that the jury failed to follow the trial court's instructions related to the elements of third degree assault. Additionally, the prosecution's misstatement of law occurred only once in closing arguments, so the remark was not extensive. The strength of the evidence supporting Duckworth's conviction is extensive, as detailed above. Ultimately, in viewing the relevant factors together, the analysis weighs against the finding of prejudice to Duckworth.

### (e) Quantifying "Reasonable Doubt"

Finally, Duckworth asserts that the prosecutor "defined beyond a reasonable doubt, in a roundabout way, as the jury being '97% sure' of guilt." Brief of appellant at 24. We disagree with his interpretation.

The prosecution attempted to explain reasonable doubt by stating:

> Reasonable doubt is, I don't know if I should get married, I don't know if I should walk down the aisle. You don't have to explain or analyze or have, okay, I think 97 percent, but I'm not a hundred percent sure, but I think it's about 97 percent sure that this happened. But are you firmly convinced that it happened?

The prosecutor further stated that "[r]easonable doubt finds you" and "[y]ou don't have to go looking." She analogized it to the feelings outlined by Costello in his testimony, stating that for Costello, reasonable doubt "sat in the pit of his gut and made him feel that and he still thinks about it." Taken in context, the prosecutor was not defining reasonable doubt as being "97 percent" sure of something; rather, she was attempting to convey the somewhat elusive nature of reasonable doubt.

Additionally, the trial court provided a definition of reasonable doubt in the jury instructions that stated:

> A reasonable doubt is one based upon reason and common sense after careful and impartial consideration of all the evidence. Proof beyond a reasonable doubt is proof so convincing that you would rely and act upon it without hesitation in the more serious and important transactions of life. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

Given the context of the prosecutor's statement and the instruction received by the jury, we decline to find this statement constituted misconduct.

Based upon our plain error review of the prosecutor's statements, we find no abuse of discretion in the district court's denial of Duckworth's motion for new trial.

### 3. EXCESSIVE SENTENCES

Duckworth argues that the trial court imposed an excessive sentence for each of his four convictions. We disagree.

Unless the trial court abused its discretion, an appellate court will not disturb an imposed sentence so long as the sentence is within the prescribed statutory limits. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). An abuse of discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive the defendant of a substantial right and a just result. *State v. Oldenburg*, 10 Neb. App. 104, 628 N.W.2d 278 (2001).

The trial court must consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, the nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). The court should also consider the rehabilitative needs of the defendant in sentencing, such as his addiction to narcotic drugs. *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991). Where a sentence imposed within statutory limits is alleged to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the aforementioned factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Oldenburg, supra*.

Duckworth was convicted of four criminal charges: (1) second degree assault, a Class IIA felony carrying a maximum statutory penalty of 20 years' imprisonment, see § 28-309 and Neb. Rev. Stat. § 28-105 (Reissue 2016); (2) terroristic threats, a Class IIIA felony carrying a maximum statutory penalty of 3 years' imprisonment, see §§ 28-311.01 and 28-105; (3) possession of a controlled substance (methamphetamine), a Class IV felony carrying a maximum statutory penalty of 2 years' imprisonment, see Neb. Rev. Stat. §§ 28-416 and 28-405 (Supp. 2017) and § 28-105; and (4) possession of a

controlled substance (heroin), a Class IV felony carrying a maximum statutory penalty of 2 years' imprisonment, see §§ 28-416, 28-405, and 28-105.

As to count 1, the trial court sentenced Duckworth to 5 to 8 years' imprisonment. For count 2, the trial court sentenced Duckworth to 1 to 2 years' imprisonment. Regarding counts 3 and 4, the trial court sentenced Duckworth to 1 to 2 years' imprisonment for each. The court determined the sentences would be served concurrently and allotted Duckworth 83 days' credit for time served. Each of the court's imposed sentences was within the relevant statutory requirements for sentencing. See § 28-105.

The trial court took into account all the relevant factors for Duckworth's sentencing and utilized the presentence investigation report generated for Duckworth. The presentence investigation report indicated that Duckworth's risk for recidivism and his danger to the community were high due to his criminal history, education/employment, family/marital status, leisure/recreation activities, companionship, alcohol/drug problems, procriminal attitude/orientation, and antisocial patterns. Each of these led to the conclusion that Duckworth had a very high risk to reoffend and was a poor candidate for probation, and the presentence investigation report suggested that Duckworth obtain a psychiatric evaluation, residential drug treatment, a cognitive behavioral course, and employment-readiness services.

The trial court explained that it considered Duckworth's and counsels' comments at the sentencing hearing, Duckworth's age, Duckworth's education, the witnesses at trial, and Duckworth's criminal history. Duckworth had multiple past nonviolent criminal charges, as well as a violent criminal history, including an assault, terroristic threats, use of a deadly weapon, and an assault by a confined person.

According to the trial court, the incident in question leading to Duckworth's conviction was "very violent, very dangerous, and . . . just cruel to the victim involved." The court

opined that a lesser sentence would depreciate the serious-
ness of the crimes and would promote disrespect for the law.
Duckworth's incarceration was "necessary for the protection
of the public," and his "treatment can best be offered and
obtained in an institution." Based on these statements, the trial
court clearly considered Duckworth's rehabilitative needs and
the importance of protecting the public in determining his sen-
tences. We find no abuse of discretion.

### 4. Ineffective Assistance of Counsel

Duckworth assigns that he received ineffective assistance
of counsel at trial. This assignment of error, however, fails to
specifically allege deficient performance by trial counsel, as
required by the Supreme Court. See *State v. Mrza*, 302 Neb.
931, 926 N.W.2d 79 (2019).

[13] Where deficient performance is not alleged in the
assigned error, an appellate court will not scour the remainder
of the brief in search of such specificity and will not synthesize
a specific assignment from the argument section of the brief of
the party asserting the error. See *id.*

Because Duckworth failed to identify counsel's alleged defi-
ciency in his assigned error, we decline to address his claim.

### VI. CONCLUSION

For the reasons stated above, we affirm Duckworth's convic-
tions and sentences.

Affirmed.