IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE GUARDIANSHIP & CONSERVATORSHIP OF STRATBUCKER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE GUARDIANSHIP AND CONSERVATORSHIP OF
JUDITH A. STRATBUCKER, A PROTECTED PERSON.

JULIE A. FRANK ET AL., APPELLEES,

V.

RICHARD J. HENKENIUS, APPELLANT.

Filed February 23, 2021.    No. A-20-430.

Appeal from the County Court for Douglas County: MARCENA M. HENDRIX, Judge. Affirmed.

Richard J. Henkenius, pro se.

No appearance for appellees.

MOORE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Richard J. Henkenius appeals from an order of the county court for Douglas County finding him in contempt of court and ordering him to pay $2,500 as a sanction. For the reasons set forth herein, we affirm.

## BACKGROUND

In July 2019, Stacie Bannon was appointed as temporary guardian and conservator for Judith Stratbucker. Bannon had an attorney who represented her at the time of her appointment, but her attorney withdrew as counsel in August. At about the same time, the county court removed Bannon and appointed Julie A. Frank as temporary guardian and conservator. After the withdrawal

- 1 -

of Bannon's first attorney, Henkenius was approached about potentially representing Bannon. Bannon requested that Henkenius enter his appearance and file a motion to terminate the appointment of Frank and to reinstate Bannon as temporary guardian and conservator for Stratbucker. Henkenius did so in September. Henkenius did not file any further motions or pleadings in the case. In addition, he did not appear at scheduled hearings.

On January 9, 2020, upon its own motion, the county court ordered Henkenius to show cause as to why he should not be held in contempt of court. In a written order, the court stated that Henkenius had failed to appear at subsequent hearings in the course of the proceedings after filing his appearance. According to the order, the court attached all the pleadings in the court file in support of its order. However, these pleadings and notices for hearing are not otherwise included in our record. A copy of the order requiring Henkenius to show cause why he should not be held in contempt of court was forwarded to all interested parties in the case and to the Counsel for Discipline for the Nebraska Supreme Court.

At the show cause hearing, Henkenius offered an affidavit in support of why he should not be held in contempt. Henkenius' affidavit stated that he was not hired or retained by Bannon after he filed his appearance in the matter. He summarized the electronic communication he had engaged in with opposing counsel where he notified opposing counsel that he was not retained and would not do any further work until he was formally retained. He stated that though Bannon initially stated she could borrow money to pay a retainer, she never signed a retainer agreement, never paid him anything, and had decided to represent herself. As a result, Henkenius did not provide any further representation. Henkenius also provided his affidavit to the Counsel for Discipline.

Henkenius made a brief argument during the show cause hearing. He argued that he had never been retained by Bannon and only entered his appearance because Bannon was in danger of losing her case. He stated that he relied on Bannon's promise that she would sign a retainer agreement and would pay Henkenius after he entered his appearance. He also argued that he informed all interested parties that he would not do any more work on the case until he was retained by Bannon. At this point in Henkenius' argument, the following colloquy occurred:

THE COURT: Did you inform the Court?
MR. HENKENIUS: Again? I'm sorry.
THE COURT: Did you inform the Court?
MR. HENKENIUS: I have not, except for -- prior to today.
THE COURT: Did you move to withdraw?
MR. HENKENIUS: I have not yet.
THE COURT: All right. You're excused. The matter's under advisement. . . .

On February 4, 2020, the court entered an order, finding Henkenius in contempt of court. The county court ordered Henkenius to pay $2,500 as a sanction for his conduct. The court specifically concluded that Henkenius filed a "Motion to Reinstate Angela Stacie Bannon as Guardian and Conservator" but then failed to appear for hearings, failed to file a motion to withdraw, and remained attorney of record despite the matter having been set for trial.

On February 11, 2020, Henkenius filed a verified motion to vacate the order. In this motion, Henkenius stated that he filed a motion to withdraw but then withdrew the motion at trial which

was held on February 6, 2020. He represented Bannon at trial. He argued that his conduct was not egregious and that he was only sanctioned for failing to attend some hearings. He also stated that these hearings were conducted by the court on its own motion "without notice to any party and without a hearing." He also argued that these hearings "accomplished nothing." He further argued that the contempt sanction was onerous or unjust because he represented Bannon at trial and was not paid for this representation. Henkenius stated that he received a letter from the Counsel for Discipline about the court finding him in contempt of court. He requested that the court vacate its order requiring him to pay $2,500 as a contempt sanction. Henkenius ultimately filed a motion to withdraw as Bannon's counsel on February 27, 2020.

A hearing on the motion to vacate was held on June 1, 2020. Henkenius did not make an argument at the hearing on the motion to vacate but the verified motion for vacating the order was received by the court. The motion to vacate was denied by the court on June 4, 2020. Henkenius filed a notice of appeal on June 11, 2020, to this court.

## ASSIGNMENTS OF ERROR

Henkenius assigns nine errors committed by the county court. Consolidated, renumbered, and restated, he assigns and argues that the county court erred by (1) entering a criminal contempt sanction without conducting a criminal proceeding, (2) finding him in contempt without specifying that he willfully committed the actions underlying the contempt, (3) failing to find that his actions actually obstructed the administration of justice as required under Neb. Rev. Stat. § 25-2121 (Reissue 2016), (4) entering a criminal contempt sanction in the amount of $2,500 without mitigating the amount based upon his actions of representing Bannon at trial, and (5) notifying the Counsel for Discipline of his contempt sanction without specifying which actions violated the Nebraska Rules of Professional Conduct.

## STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *State ex rel. Malone v. Baldonado-Bellamy*, 307 Neb. 549, 950 N.W.2d 81 (2020).

A final judgment or order in a contempt proceeding is reviewed in the same manner as in a criminal case. *State v. Thalken*, 2 Neb. App. 867, 516 N.W.2d 635 (1994). A trial court's factual finding in a contempt proceeding will be upheld on appeal unless the finding is clearly erroneous. *Id.*

When reviewing a contempt order, an appellate court reviews for an abuse of discretion in the trial court's determination of the appropriateness of the sanction it imposed. *In re Interest of Samantha L. & Jasmine L.*, 284 Neb. 856, 824 N.W.2d 691 (2012). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

Henkenius appeals from an order more than 30 days after the order was entered; thus, we must first determine whether we have jurisdiction to address the merits of his appeal.

Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction. *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019). Notwithstanding whether the parties raise the issue of jurisdiction, an appellate court has a duty to raise and determine the issue of jurisdiction sua sponte. *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002). In order for an appellate court to have jurisdiction over an appeal, appellate jurisdiction must be specifically provided by the Legislature. *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017). Our appellate jurisdiction, as defined by statute, is limited to reviewing final orders or judgments. *Simms v. Friel*, 302 Neb. 1, 921 N.W.2d 369 (2019).

A contempt sanction, either as a coercive contempt sanction or a criminal contempt sanction can take on the aspect of a final order. Contempt sanctions are coercive or civil in nature when they aim to compel future obedience to the court's orders and decrees. *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010). Coercive or civil contempt sanctions are remedial if they coerce the contemnor's obedience for the benefit of a private party or compensate a complainant for losses sustained. *Smeal Fire Apparatus Co. v. Kreikemeier, supra, disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Typically, a contemnor would be in a position to mitigate the sentence of a coercive or civil contempt sanction by complying with the court's order. *Smeal Fire Apparatus Co. v. Kreikemeier, supra.* In *Smeal Fire Apparatus Co. v. Kreikemeier*, the Supreme Court clarified the rules about appealing a civil contempt sanction in holding "the distinction between criminal and civil contempt sanctions has no relevance to whether a party may appeal from a final order in a supplemental postjudgment contempt proceeding." 279 Neb. at 684, 782 N.W.2d at 867. Prior to this ruling, any civil contempt order was found to be nonappealable but could be collaterally attacked through a petition for habeas corpus. *Id.*

In contrast, contempt sanctions are punitive or criminal in nature when the contempt sanction punishes past disrespectful or contumacious conduct and vindicates the court's authority. *In re Contempt of Liles, supra.* A punitive or criminal sanction is absolute and not subject to mitigation if the contemnor alters his future conduct toward the court. *Id.* A contemnor can always appeal from a criminal or punitive contempt order. *Smeal Fire Apparatus Co. v. Kreikemeier, supra.* A punitive or criminal contempt sanction takes on the aspects of a final order or of an order affecting a substantial right issued in a special proceeding. *In re Contempt of Liles, supra.*

In the present case, the contempt sanction order was punitive or criminal in nature. It was instituted by the court against Henkenius for his absences from scheduled court hearings despite being an attorney of record for an interested party. The sanction was not subject to any mitigation by Henkenius or any future conduct by him. In other words, the contempt sanction of $2,500 would remain unchanged regardless of any future behavior of Henkenius. In addition, this sanction was ordered based on the court's own motion and was not requested by a private party to enforce a prior order or to recompense any losses sustained. Thus, it was a criminal or punitive contempt sanction and the court's order entering the contempt sanction is a final, appealable order.

In order to vest an appellate court with jurisdiction, a notice of appeal must be filed within 30 days of the entry of the final order. *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002). Because the order finding Henkenius in contempt was entered on February 4, 2020, Henkenius would have needed to file an appeal within 30 days, or by March 5, 2020. The notice of appeal

was filed on June 15, 2020, more than 30 days after the order. However, the running of the time for filing a notice of appeal may be terminated by the filing of certain motions. See Neb. Rev. Stat. § 25-1912(3) (Cum. Supp. 2020). The running of the time for filing a notice of appeal would be terminated not only by a timely motion for new trial or by a timely motion to set aside a verdict or judgment, but, also, by a timely motion to alter or amend a judgment under Neb. Rev. Stat. § 25-1329 (Reissue 2016). *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019). Unless Henkenius properly filed one of these motions, we would lack jurisdiction to hear the appeal, as his notice of appeal would have been untimely filed.

Henkenius filed a motion to vacate the judgment on February 11, 2020, 7 days after the court's order for contempt sanctions was entered. This motion was titled a motion to vacate, as opposed to a motion to set aside a verdict, motion to alter or amend a judgment, or a motion for a new trial. However, an appellate court reviews a postjudgment motion based on the relief it seeks, rather than its title. *Bayliss v. Clason*, 26 Neb. App. 195, 918 N.W.2d 612 (2018). In order to qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek substantive alteration of the judgment. *McEwen v. Nebraska State College Sys., supra.* Effectively asking the court to reconsider its decision is equivalent to a motion to alter or amend under § 25-1329. *Bayliss v. Clason, supra.* In the present case, Henkenius' motion to vacate effectively asked the court to reconsider its decision. Thus, it would be considered a motion to alter or amend the judgment under § 25-1912 and would effectively terminate the 30-day requirement necessary to file the appeal. The court denied Henkenius' motion to vacate on June 4, 2020. He appealed on June 11, 2020, within 30 days of that order.

In sum, the criminal or punitive contempt sanction was a final, appealable order from which Henkenius could file an appeal. Ordinarily, he would have needed to file an appeal within 30 days of that order. However, he timely filed a motion to vacate 7 days after the order being entered. This motion was equivalent to a motion to alter or amend judgment as it effectively asked the court to reconsider its decision. This motion terminated the necessity to file a notice of appeal within 30 days of the contempt order. Once the court denied the motion to vacate, he timely appealed from that order. Thus, even though Henkenius filed his appeal more than 30 days after the date of the final order finding him in contempt, we still have jurisdiction to consider the merits of the appeal.

*Criminal Contempt Proceedings.*

Henkenius argues that the court lacked jurisdiction to impose a criminal contempt sanction because it did not conduct criminal proceedings when it found him to be in criminal contempt. While we agree that criminal contempt sanctions typically require the court to conduct criminal proceedings, as we explain below, under the facts of this case, such proceedings were not necessary.

A criminal sanction is invalid if it is imposed in a civil contempt proceeding. *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010). A court can impose criminal, or punitive, sanctions only if the proceedings afford the protections offered in a criminal proceeding. *Smeal Fire Apparatus Co. v. Kreikemeier, supra, disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). In proceedings for criminal

contempt, the accused is entitled to due process of law and is presumed to be innocent, cannot be compelled to testify against himself or herself, and must be advised of the nature of the charges. *In re Contempt of Sileven, supra.*

However, punishment for contempt committed in open court does not require the court to conduct criminal contempt proceedings. *Id.* Contempts committed in the presence of the court, also known as direct contempts, give the court personal knowledge of the facts and do not require the court to inform itself of the contemptuous conduct through witnesses and evidence. *In re Interest of Samantha L. & Jasmine L.*, 284 Neb. 856, 824 N.W.2d 691 (2012). Such direct evidence of contempt allows the court to punish the offending party summarily. *Id.* In contrast, the events constituting indirect contempt occur outside the presence of the court and the court must inform itself of the facts through witnesses or other evidence. *Id.* If the court must inform itself through witnesses or evidence of any material facts, then summary punishment is inappropriate. *Id.*

The Supreme Court previously addressed issues similar to those in the present case in *In re Contempt of Potter*, 207 Neb. 769, 301 N.W.2d 560 (1981), where an attorney was ten minutes late for the continuation of a jury trial while prosecuting a case. The trial court explained that it would find the attorney in contempt of court because he was late and because he had failed to appear in two prior cases before the judge. *Id.* The court entered an order for the attorney to show cause as to why he should not be held in contempt of court. *Id.* At the show cause hearing, the attorney had his own counsel to defend him and made arguments but ultimately did not explain why he was late. *Id.* The Supreme Court upheld the court's ruling of contempt explaining that willful failure by an attorney to appear in court, without an excuse, when he has notice of the appointed time and delays the business of the court, constitutes contempt. *Id.* The court clarified that tardiness or failure to appear is a hybrid of direct and indirect contempt because the tardiness or failure to appear usually is within the court's personal knowledge; however, the determination of whether the tardiness or failure to appear is willful and without excuse would require production of evidence. *Id.* The Supreme Court adopted reasoning from the California Supreme Court which stated the following:

> "It is obvious that the disruption of judicial proceedings caused by the absence of an attorney occurs in the immediate view and presence of the court. The burden of excusing the obstruction must, of course, be placed upon the attorney. . . . Where the attorney although notified by the court to appear at a specific time, fails to do so and does not offer an excuse, all matters relevant to the determination of contempt happen in court. In those cases where the attorney seeks to excuse his conduct, the excuse ordinarily will be based on matters occurring out of court. However, the contingency, that an attorney who is absent may later offer an excuse should not compel a judge, when instituting proceedings, to treat the conduct as indirect rather than direct contempt."

*Id.* at 774-75, 301 N.W.2d at 563, quoting *Chula v. Superior Court*, 57 Cal.2d 199, 18 Cal. Rptr. 507, 368 P.2d 107 (1962) (citations omitted).

In upholding the contempt sanctions imposed by the lower court in *In re Contempt of Potter, supra*, the Supreme Court explained that the lower court did not proceed summarily but rather entered a show cause order which informed the attorney of the facts constituting the contempt; the court set the matter for hearing and gave the attorney adequate time to prepare; the

attorney was represented by counsel and was given an opportunity to offer any excuse he had. The Supreme Court ultimately concluded that before punishment for indirect contempt may be imposed, there must be an accusation in some form, notice, and an opportunity for defense. *Id.* In *In re Contempt of Potter*, the rights of the attorney were fully protected by the show cause order apprising him of the charge against him followed by an opportunity to be heard.

In the present case, the contempt sanction against Henkenius was a criminal or punitive contempt sanction, as we discussed above, and the contemptuous actions were a hybrid of direct and indirect contempt. The court did not need to further investigate whether Henkenius was absent from the court. But to determine whether or not the absences were willful, the court needed to investigate and receive evidence. Thus, it was a hybrid of direct and indirect contempt. As such, it would have been inappropriate to enter the criminal contempt sanction summarily.

However, the court did not enter its order summarily. As in *In re Contempt of Potter*, the court in this case issued a show cause order to Henkenius. This show cause order put Henkenius on notice of the facts surrounding his alleged contemptuous behavior. The show cause hearing was scheduled 7 days after the court entered its order. This provided Henkenius time to prepare for his own defense. Henkenius prepared an affidavit to excuse his absences which the court received. However, he did not offer any reason for his failure to appear other than to say he had not been retained even though he had entered his appearance as counsel for Bannon and had filed a motion on her behalf. In any event, Henkenius was apprised of the charge against him and was given an opportunity to be heard through the show cause hearing that the court ordered. Thus, the proceeding was appropriate given the nature of the alleged contemptuous behavior.

*Finding of Contempt.*

Henkenius next assigns that the county court did not properly determine that his actions were willful. In support of this assignment, he argues that he did not receive prior notice of the hearings that he missed. Notably, he did not raise this argument before the county court until he filed his motion to vacate. Because he alleges that he did not receive notice of the hearings that he missed, he argues that his absences could not have been willful.

Judgments of criminal contempt are reviewable in the same manner as in criminal cases. See *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010). An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Duckworth*, 29 Neb. App. 27, 950 N.W.2d 650 (2020). A trial court's factual finding in a criminal contempt proceeding will be upheld on appeal unless the finding is clearly erroneous. *State v. Thalken*, 2 Neb. App. 867, 516 N.W.2d 635 (1994).

The Supreme Court has previously explained that the term, willful, within the context of willful disobedience of a lawful order of the court, means that the violation was committed intentionally or with knowledge that the act was in violation of the court order. *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier, supra.* The Supreme Court further explained that willfulness requires a determination of deliberate or intentional behavior. *In re Contempt of Sileven, supra.* Using this reasoning, we previously reversed a criminal contempt sanction issued against a pro se litigant for

failing to comply with the procedures set out for issuing and serving subpoenas. *State v. Thalken, supra.* We explained that this was the first time the litigant attempted to issue and serve subpoenas; additionally, there was no presumption of the contemnor's knowledge of issuing subpoenas nor was there evidence that he knew he was violating the law. *Id.*

Henkenius notes that the court did not specifically state his absences from hearings were willful. However, we presume in a bench trial that the judge was familiar with and applied the proper rules of law unless it clearly appears otherwise. *Randy S. v. Nicolette G.*, 302 Neb. 465, 924 N.W.2d 48 (2019). Thus, we presume that the court, in finding Henkenius in contempt, determined that his absences were willful and review the record to see if the decision by the court that Henkenius' actions were willful was clearly erroneous. However, we do not reweigh the evidence or assess his credibility in doing so. In his response to the court order to appear and show cause, Henkenius filed an affidavit. This affidavit stated that he failed to appear because he had not been retained by Bannon. He reiterated this statement to the court during the show cause hearing. He also admitted to the court that he had not previously informed the court that he was not retained nor had he filed a motion to withdraw. No mention was made of lack of notice.

Not until filing his verified motion to vacate did he argue, as he does on his brief on appeal, that he did not receive any notice of the hearings. However, neither on appeal, nor in his motion to vacate, did he provide the record of the case showing that these hearings were scheduled without providing notice to him. Therefore, outside of his own sworn statement found in the motion, Henkenius does not provide any evidence, most notably the court's notices of hearing and records of the hearings which would excuse his failure to appear. In contrast, according to his affidavit and correspondence attached thereto which was submitted at the show cause hearing, Henkenius informed opposing counsel and interested parties that he would do no further work until a retainer was paid and a retainer agreement was signed. In addition, Henkenius provided no evidence regarding why he failed to inform the court that he would not appear. Therefore, even if we consider Henkenius' argument that he received no notice, we cannot say on this record that the decisions by the court finding him in contempt and overruling his motion to vacate were clearly erroneous.

*Obstructing Due Administration of Justice.*

Henkenius argues that the county court abused its discretion in finding him in contempt because the contempt powers of a court are limited to prevent actual obstruction of justice and the court failed to show how his actions obstructed justice. Therefore, he argues that the court failed to follow the purpose of Nebraska's contempt statute, § 25-2121. Section 25-2121 states, in relevant part:

> Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of . . . (4) any willful attempt to obstruct the proceedings, or hinder the due administration of justice in any suit, proceedings, or process pending before the courts[.]

Notably, however, the power to punish does not depend upon statute. *In re Contempt of Potter*, 207 Neb. 769, 301 N.W.2d 560 (1981). It has long been the law of this state that the authority to punish for contempt is inherent in all courts of record and is beyond the power of the

Legislature to abridge. *Hawes v. State,* 46 Neb. 149, 64 N.W. 699 (1895). More recently, the Supreme Court held that Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice. *In re Interest of Samantha L.,* 284 Neb. 856, 824 N.W.2d 691 (2012). This authority includes the power to punish for contempt, which is incident to every judicial tribune. *Id.* As we discussed above, the willful failure by an attorney to appear in court, without an excuse, when he has notice of the appointed time and delays the business of the court is contempt. *In re Contempt of Potter, supra.*

As we have discussed above, the finding of Henkenius in contempt for his failure to appear was not clearly erroneous. Henkenius argued that the reason he failed to appear before the court was because he was not retained. He did not provide any support for his contention that he failed to receive notice of the proceedings. His failure to appear, thus delaying the business of the court would constitute contempt, even though the court did not expressly explain that his behavior obstructed or hindered the due administration of justice.

*Amount of Sanction.*

Henkenius assigns and argues that the criminal contempt sanction of $2,500 was excessive given his actions in the case which he characterizes as missing two hearings. We review the appropriateness of the sanction for an abuse of discretion. See *In re Interest of Samantha L., supra.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and the evidence. *State v. Dixon,* 282 Neb. 274, 802 N.W.2d 866 (2011). We reiterate that judgments of criminal contempt are reviewable in the same manner as in criminal cases. See *In re Contempt of Liles,* 216 Neb. 531, 344 N.W.2d 626 (1984), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier,* 279 Neb. 661, 782 N.W.2d 848 (2010). In criminal cases, an appellate court does not review a sentence de novo and the standard is not what sentence the appellate court would have imposed. *State v. Thompson,* 15 Neb. App. 764, 735 N.W.2d 818 (2007).

Henkenius' criminal contempt sanction was in the amount of $2,500. The county court's order stated that the court found him in contempt because Henkenius missed hearings, did not file a motion to withdraw, and did not otherwise inform the court that he was not Bannon's attorney. When asked as to why he failed to appear, Henkenius stated that he was not retained to perform any work for Bannon. According to Henkenius, he notified the other parties that he was not representing Bannon at the time of the hearing nor would he do any more work until he was retained. He conceded that he did not notify the court, nor did he file a motion to withdraw. Only after his contempt sanction was entered, did he argue that the hearings were scheduled without him receiving notice. However, he did not provide a record which supports this contention with respect to either his motion to vacate or on appeal. While we recognize that the sanction imposed is substantial, we cannot say that the sanction imposed was clearly against justice, conscience, reason, and the evidence.

*Notifying Counsel for Discipline.*

Finally, Henkenius assigns and argues that the county court erred by notifying the Counsel for Discipline about the finding of contempt but failed to specify which of Henkenius' actions violated Neb. Ct. R. of Prof. Cond. § 3-508.4. This rule states that it is professional misconduct

for a lawyer to engage in conduct that is prejudicial to the administration of justice. § 3-508.4(d). He further argues that his actions were not prejudicial to the administration of justice.

We decline to address this assignment of error as it is the obligation of a judge to report to the appropriate disciplinary authority any known misconduct under the Nebraska Rules of Professional Conduct. Neb. Rev. Code of Judicial Conduct § 5-302.15. Ignoring or denying known misconduct undermines a judge's responsibility to participate in efforts to ensure public respect for the justice system. § 5-302.15 cmt. 1. The Counsel for Discipline has the duty to review, investigate, or refer for investigation all matters of alleged misconduct called to his or her attention. Neb. Ct. R. § 3-308(B)(1). The Counsel for Discipline also has the power to dismiss a grievance if, in his or her judgment, it is without foundation and merit. § 3-308(B)(3). To the extent that Henkenius believes there is no merit to the report, he can address this with the Counsel for Discipline. We, thus, decline to address this assignment of error.

CONCLUSION

For the foregoing reasons, we affirm the decision of the county court in entering its criminal contempt sanction against Henkenius.

AFFIRMED.